UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEREK McKISSACK,

        Plaintiff,

v.

VAN BUREN COUNTY SHERIFF'S
DEPARTMENT, *et al.*,

        Defendants.
                                 /

Case No. 1:18-cv-799

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a *pro se* action brought by plaintiff Derek McKissack. Plaintiff is currently in the custody of the Michigan Department of Corrections (MDOC). He filed this action with respect to the conditions at the Van Buren County Jail and "Jackson Prison." Plaintiff alleged that defendants violated his rights under the Eighth and Fourteenth Amendments, Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq.*, and a variety of state law torts. This matter is now before the Court on defendants DeLaRosa and Ampey's motion for summary judgment (ECF No. 17). Plaintiff did not file a response to this motion. For the reasons discussed below, defendants' motion should be granted, the unidentified defendant "Unknown Party #2" should be dismissed, and this action should be terminated.

       **I.**       **Background**

       **A.**       **Plaintiff's two lawsuits**

This is plaintiff's second federal lawsuit involving medical care he received at the Van Buren County Jail in 2015. In his first lawsuit, *McKissack v. Niemi*, 1:17-cv-491 ("*McKissack I*"), plaintiff alleged that a nurse prescribed him mental health medication showing no concern for

1

his complaints of being dizzy and light-headed. *See McKissack I* (Compl. (ECF No. 1, PageID.5)). As a result, plaintiff "blacked out" and shattered his left collar bone in August 2015. *Id.* at PageID.6. The complaint in *McKissack I* was prepared on a pre-printed civil rights complaint form, handwritten and signed by plaintiff. Plaintiff filed *McKissack I* in the United States District Court for the Eastern District of Michigan, which transferred the case to the Western District. This Court granted defendant summary judgment on May 21, 2018, after concluding that plaintiff did not present evidence sufficient to support the subjective component of an Eighth Amendment claim, *i.e.*, "[t]he record shows that defendant did not prescribe any medications and that she was not aware that plaintiff had any problem with dizziness or lightheadedness before he fell and broke his collarbone." *See McKissack I* (R&R (ECF No. 18, PageID.91); Order (ECF No. 19); Judgment (ECF No. 20)).

About two months after the dismissal of *McKissack I*, plaintiff filed the present lawsuit (sometimes referred to as "*McKissack II*"). As discussed, *infra*, plaintiff testified that an MDOC legal writer encouraged plaintiff to file *McKissack II*. Unlike *McKissack I*, the complaint in *McKissack II* was typewritten on blank sheets of paper (as opposed to a form complaint) and included a "Power of Attorney" ("POA") which granted another prisoner, MDOC inmate Dimas Garza, #270734, sweeping authority as plaintiff's "attorney-in-fact," including the power to "sue" on plaintiff's behalf and "full power and authority to do, take and perform all and every act . . . in the exercise of any of the rights and powers herein granted . . . as I might or could do if personally present." *See* POA (ECF No. 1-1, PageID.10-12). In addition, plaintiff completed an affidavit or declaration which "authorized" the court "to send my Power of Attorney Dimas Garza #270734 at the same address any and all responses to the complaint by the courts and Attorney General of any and all Defense Counsel in this litigation." Compl. at PageID.7. Plaintiff also stated that he suffers

2

from disabilities and that "the attached Power of Attorney authorizes this Honorable Court, Attorney General and any other partie(s) to send my P.O.A. any & all responses." *Id*. The POA also included a financial incentive for plaintiff and Garza, stating that "any outside parties" who "attempt to abridge/impair or nullify" the contract between plaintiff and Garza "stipulate to the amount of damages in the sum certain of Ten-Thousand $10,000.00 Federal Reserve Notes, or the Equivalence of equal value in Gold & Silver Bullion." *Id*. at PageID.11. In short, inmate Dimas Garza is attempting to act as plaintiff's attorney in this matter and to obtain $10,000.00 of damages from anyone who attempted "to abridge/impair or nullify" the POA.

Dimas Garza is not an attorney. In his own *pro se* civil rights lawsuit, *Dimas Garza v. Robert Naples et al.*, 2:17-cv-104 (W.D. Mich.), Garza filed three motions for appointment of counsel (ECF Nos. 12, 52, 98), stating in a supporting declaration (ECF No. 53) that he "has not graduated high school and has no legal education," and in his most recent motion (ECF No. 98) that "I have only G.E.D. [sic] education." A non-attorney such as Garza cannot represent a party in this Court. *See* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."). Plaintiff cannot circumvent the law by appointing Garza to represent him in this case. "A power of attorney does not authorize a non-lawyer to prosecute a case in federal court on behalf of another person." *Lester v. Michigan*, No. 1:19-cv-354, 2019 WL 2442316 at *2 (W.D. Mich. June 12, 2019). *See Dayson v. Cass County Board of Commissioners*, No. 1:12-cv-1306, 2013 WL 1681301 at *1 (W.D. Mich. April 17, 2013) (plaintiff prisoner, who was not a licensed attorney, lacked standing to assert the constitutional rights of other prisoners while purporting to act as their "attorney-in-fact"). Accordingly, the POA is of no significance in this case.

By attempting to act as plaintiff's attorney and to profit from the $10,000.00 damage clause in the POA, inmate Dimas Garza has abused the litigation process in this Court. For these reasons, the undersigned recommends that Garza be banned from acting as an "attorney in fact" or agent for any *pro se* litigant in this Court. To implement this ban, any complaint, "power or attorney," or other paper filed in this Court, which appoints Dimas Garza as an "attorney in fact" or authorizes Garza to act in the litigation as an agent for a *pro se* plaintiff should be dismissed without prejudice as filed contrary to 28 U.S.C. § 1654.

### B. Plaintiff's allegations in *McKissack II*

Plaintiff's present complaint named the following defendants: the Van Buren County Sheriffs Department; Unknown Party #1 ("Unknown Psychiatrist"); Sgt. DeLaRosa (named in the complaint as "Unknown Sgt. Del Rosa"); Officer Shawn Ampey (named in the complaint as "Ampy"); and Unknown Party #2 (named as "Unknown Doctor at Jackson Prison").

The Court previously summarized plaintiff's allegations as follows:

> Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan. The events about which he complains, however, occurred at the Van Buren County Jail and at a facility Plaintiff identifies as "Jackson Prison." (Compl., ECF No. 1, PageID.2.) Plaintiff sues the following officials working for the Van Buren County Jail, in their individual and official capacities: the Van Buren County Sheriff (who is not identified by name), Sergeant (unknown) Del Rosa, Officer Shawn Ampy, and an unidentified Psychiatrist. Plaintiff also sues an unidentified doctor at Jackson Prison.
>
> Plaintiff alleges that he is an individual with mental and other disabilities who is prescribed several types of medication. He asserts that he receives "SSI" for his disabilities. (*Id.*)
>
> In November 2015, while Plaintiff was confined at the Van Buren County Jail, he told Defendants Del Rosa and Ampy that he was "not feeling well." (*Id.*, PageID.3.) He asked them to call for medical services. They allegedly made fun of him, calling him "retarded" and ridiculing his speech. (*Id.*) They told him to lay down and take a nap. Plaintiff again told them that he "wasn't feeling well" and asked them to call medical services. (*Id.*) Again, they "made fun of [his]

4

disabilities." (*Id.*) They also claimed that they would call for medical services; however, Plaintiff never received any medical attention or care.

      The following morning, when Plaintiff was in line to receive his medication, he told Defendant Ampy that he was "feeling worse than before[.]" (*Id.*) Officer Ampy promised to speak with a nurse about it so that Plaintiff could be seen by the nurse, but that never happened. Plaintiff subsequently passed out and broke his shoulder. Plaintiff claims that his symptoms were caused by the "numerous medications that he was tak[ing]." (*Id.*) These medications were prescribed by an unidentified psychiatrist contracted by the Van Buren County Jail.

      After Plaintiff received an x-ray, and officials discovered the break in his shoulder, an unidentified "Health Provider" denied Plaintiff treatment for the shoulder, despite the fact that Plaintiff was in "extreme pain." (*Id.*) Plaintiff also alleges that a doctor at "Jackson" knew about his pain and suffering from the broken shoulder, but denied Plaintiff treatment. (*Id.*) Plaintiff contends that he underwent surgery for his shoulder in 2017, while he was incarcerated at "Adrian Prison." (*Id.*)

      Based on the foregoing, Plaintiff claims that all Defendants were deliberately indifferent to his medical needs in violation of the Eighth and Fourteenth Amendments, and discriminated against him in violation of the ADA. He also asserts that they committed medical malpractice, negligence, discrimination, and "breach of duty" under state law. (*Id.*, PageID.5.)

Opinion (ECF No. 4, PageID.37-39) (footnotes omitted). Plaintiff's complaint seeks compensatory and punitive damages in excess of $3,950,000.00. Compl. at PageID.5-6. Finally, plaintiff stated "under penalty of perjury" that the statements in the complaint are "Trie [sic] and Correct . . . . [t]o raise the above statement to the standing of an affidavit to oppose any affidavits submitted by defendants seeking immunities for summary judgment." Compl. at PageID.7.

      All claims have been dismissed except for the ADA claims against Sgt. DeLaRosa and Officer Ampey in their official capacities, the state law claims against DeLaRosa and Ampey in the individual capacities, and the Eight Amendment claim against Unknown Party #2. *See* Opinion (ECF No. 4, PageID.47); Order (ECF No. 5).

      **II.**    **Defendants' motion for summary judgment**

      **A.**    **Legal standard**

5

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.    ADA claim against Sgt. DeLaRosa and Officer Ampey

This Court identified the ADA claims alleged against Sgt. DeLaRosa and Officer Ampey as follows:

> Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected

6

> to discrimination by any such entity." 42 U.S.C. § 12132. "[T]he phrase 'services, programs, or activities' encompasses virtually everything a public entity does." *Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008). In order to establish a *prima facie* claim of discrimination under Title II of the ADA, Plaintiff must show that: "(1) [he] has a disability; (2) [he] is otherwise qualified; and (3) [he] was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of [his] disability." *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015) (footnote omitted).
>
> The Court finds that Plaintiff states a colorable ADA claim involving Defendants Del Rosa and Ampy, because they allegedly denied Plaintiff's requests for medical care while making fun of his mental disabilities. Plaintiff does not state an ADA claim against the other Defendants, however. Plaintiff's assertion that the other defendants denied him medical treatment, or took any other action, because of his disability is wholly conclusory.
>
> "[T]he proper defendant under a Title II claim is the public entity or an official acting in his official capacity. . . . Title II of the ADA does not . . . provide for suit against a public official acting in his individual capacity." *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009). Accordingly, the ADA claim against Defendants Del Rosa and Ampy survives only insofar as they are sued in their official capacities. They are not liable in their individual capacities.

Opinion at PageID.45-46.

Plaintiff's deposition testimony contradicts many of the allegations set forth in his complaint and fails to set forth any claim under the ADA. Defendants have fairly summarized plaintiff's testimony as follows:

> Prior to the injury at issue here, Plaintiff requested medical treatment on a number of occasions while incarcerated at the Van Buren County Jail. (Ex. 1 at pp. 28-29). Plaintiff testified that these requests were made by filling out a prison kite, which was then provided to a corrections officer. (Ex. 1 at pp. 28-29). Each time Plaintiff filled out a prison kite, he received a consultation with a nurse within a day or two. (Ex. 1 at pp. 28-29).
>
> A "couple days" prior to sustaining the alleged injury at issue in this litigation, Plaintiff filled out a prison kite and was subsequently seen in his cell by a nurse. (Ex. 1 at pp. 18-19). Plaintiff did not indicate any need for emergency treatment in the kite, and in fact, never advised Jail personnel that he required emergency treatment at any time prior to injuring his shoulder. (Ex. 1 at pp. 20-21).
>
> Rather, Plaintiff testified that one day before injuring his shoulder, he told Officer Ampey that he was not feeling well. (Ex. 1 at pp. 18-19). Plaintiff also

7

testified that he told Sergeant DeLaRosa that he was not feeling well later that evening. (Ex. 1 at p. 20). However, these conversations did not extend beyond Plaintiff's complaint that he was dizzy and lightheaded with regard to Plaintiff's medical condition. (Ex. 1 at p. 20). Plaintiff testified that in response to this vague complaint, Sergeant DeLaRosa suggested that Plaintiff lie down so that he would not hurt himself, and advised that a nurse consultation would be requested. (Ex. 1 at pp. 19-20, 36-37). Likewise, Officer Ampey suggested that Plaintiff lie down to avoid injury. (Ex. 1 at pp. 19-20, 36-37).

Plaintiff testified that he did not speak with Officer Ampey or Sergeant DeLaRosa again prior to his injury. (Ex. 1 at pp. 21-22). Contrary to the allegation in his Complaint that he spoke with Officer Ampey on the morning of this occurrence, Plaintiff denied any such interaction at his deposition. (Ex. 1 at pp. 21-22). In fact, Plaintiff conceded that he did not inform any Jail personnel that he was still feeling ill when his shoulder injury allegedly occurred less than 24 hours later. (Ex. 1 at pp. 21-22). Plaintiff also admitted that he has no evidence that Officer Ampey or Sergeant DeLaRosa did not request a medical consultation following his complaints. (Ex 1 at pp. 25-26).

As discussed above . . . Plaintiff's Complaint contends that Officer Ampey and Sergeant DeLaRosa mocked and made fun of him when he complained that he was not feeling well. (DE 1, Compl. at p. 3, ¶¶ 15-16). **However, Plaintiff admitted that this was not true at his deposition.** (Ex. 1 at pp. 40-41). **Plaintiff also admitted his belief that Sergeant DeLaRosa and Officer Ampey "[did] their job as best they could."** (Ex 1. At p. 40) (emphasis adde [sic]). **Regarding the false allegations in his Complaint, Plaintiff admitted that he did not prepare the Complaint, and did not review it prior to filing.** (Ex. 1 at pp. 39-40). **Indeed, Plaintiff confirmed that he wanted to dismiss this case, and only filed it because his "legal writer," a fellow inmate, told him to do so.** (Ex. 1 at pp. 39-40). The relevant portions of Plaintiff's deposition testimony provide as follows:

> Q: Why did you file the second lawsuit?
> A: Because I was talking to a legal writer and he said I should try to file it under the CO's lack of help to do – to see the nurses more quickly.
>
> Q: So he told you to try again basically?
> A: Yeah. I didn't really want to. It was like I don't even know why I filed it really.
>
> \* \* \*
>
> Q: **Did you review the complaint before it was filed in this case?**
> A: **No.**

8

>Q: Okay. You signed it?
>A: Yes.
>
>Q: **Did you read it?**
>A: **No.**
>
>Q: **So you had no idea what the allegations were in the Complaint at the time that you filed it?**
>A: **No.**
>
>Q: If you didn't want to file the lawsuit in the first place, why are you proceeding with it?
>A: I didn't even know how to cancel it.
>
>Q: **Would you like to dismiss the case?**
>A: **I've been wanting to.**
>
>Q: **And why do you want to dismiss the case?**
>A: It's really because I don't think it's going to go through, plus I don't think they had – **I think they done their job as best they could.**
>
>Q: Sgt. – or excuse me, Sgt. Delarosa and Officer Ampy you're talking about?
>A: Yes.
>
>Q: **They didn't make fun of you when you asked to see a nurse did they?**
>A: **No.**

(Ex. 1 at pp. 39-41) (emphasis added).

Defendants' Brief (ECF No. 18, PageID.102-104) (emphasis in original).

The Court previously found that plaintiff's complaint "states a colorable ADA claim involving Defendants Del Rosa [sic] and Ampey, because they allegedly denied Plaintiff's requests for medical care while making fun of his mental disabilities." Opinion at PageID.46. However, at his deposition, plaintiff conceded that he never read the complaint, that the core allegations with respect to the ADA violations are not true, and that defendants DeLaRosa and

Ampey never made fun of him or referenced any alleged disability.[1]  Plaintiff's claims are meritless, being either unsupported and contradicted by his deposition testimony.  Accordingly, defendants' motion for summary judgment should be granted as to the ADA claim.

### III. State law claims against defendants Sgt. DeLaRosa and Officer Ampey

The complaint also includes vague allegations of state law, *i.e.*, that defendants violated "Michigan Tort Law, Medical Malpractice, Negligence and breach of duty."  Compl. at PageID.5.  Here, the Court exercised its supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because those claims appeared to be intimately related to the alleged § 1983 violation.  *See* 28 U.S.C. § 1367(a) ("the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy").  The dismissal of plaintiff's federal claims against defendants Sgt. DeLaRosa and Officer Ampey requires the Court to re-examine the issue of supplemental jurisdiction for the state law claims alleged against these defendants.  Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction."  Once a court has dismissed a plaintiff's federal claim, the court must determine whether to exercise, or not to

---

[1] By signing and filing the complaint without reviewing it, plaintiff violated Fed. R. Civ. P. 11(b) which provides in pertinent part as follows:

**(b) Representations to the Court.**  By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

exercise, its supplemental jurisdiction under § 1367. *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892–893 (6th Cir.1998). As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir.1996). Here, plaintiff's meritless federal claims against defendants DeLaRosa and Ampey should be dismissed. There is no reason to retain supplemental jurisdiction over plaintiff's state law claims. Accordingly, the Court should dismiss the state law claims asserted against defendants DeLaRosa and Ampey.

## IV.  Unknown Party #2

As discussed, plaintiff's complaint also sued "Unknown Party #2", an unknown doctor at "Jackson Prison". While the Court found that plaintiff had stated a cause of action under the Eighth Amendment with respect to an unknown doctor, it did not serve the complaint because plaintiff did not provide sufficient information to identify this defendant. Opinion at PageID.47. An unknown or "Doe" defendant listed in a complaint is not a party to a lawsuit. Rather, "Doe defendants are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed." *Hindes v. FDIC*, 137 F.3d 148, 155 (3rd Cir. 1998) (internal quotation and citation omitted). The failure to identify and serve a Doe defendant constitutes failure to prosecute and warrants a dismissal of that defendant. *See Saucier v. Camp Brighton Prison*, No. 13-15077, 2016 WL 11468926 at *3 (April 26, 2016), R&R adopted, 2016 WL 3251761 (E.D. Mich. June 14, 2016). The deadlines for conducting discovery and filing dispositive motions have passed and this case is ready to proceed to trial. *See* Case Management Order (ECF No. 10). However, because plaintiff has never identified Unknown Party #2, there is no defendant to stand

11

trial for his allegations against this unknown party.  Accordingly, Unknown Party #2 should be dismissed and this case terminated.

### V. Recommendation

For these reasons, I respectfully recommend that defendants DeLaRosa and Ampey's motion for summary judgment (ECF No. 17) be **GRANTED** as to plaintiff's federal claim brought against these defendants under the Americans with Disabilities Act.

I further recommend that the state law claims against defendants DeLaRosa and Ampey be **DISMISSED** pursuant to 28 U.S.C. § 1367.

I further recommend that defendant **Unknown Party #2** be **DISMISSED**.

I further recommend that this action be **DISMISSED**.

I further recommend that inmate **Dimas Garza** be banned from representing *pro se* litigants in this Court and that any complaint, "power or attorney," or other paper filed in this Court, which purports to appoint Dimas Garza as an "attorney in fact" or authorizes Garza to act for a *pro se* plaintiff, should be dismissed without prejudice as filed contrary to 28 U.S.C. § 1654.


Dated:  January 7, 2020                    /s/ Ray Kent
                                           United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).